United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HECTOR DIAZ,

    Petitioner,

v.

BEN CURRY, Warden,

    Respondent.

No. C 06-5686 CRB

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Hector Diaz, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the constitutionality of a September 29, 2004, decision by the Board of Prison Terms ("BPT") to deny him parole. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

On September 6, 1981, David Henry Roberts was murdered. The murder was committed to keep Roberts from testifying as a witness in a criminal case involving stolen computer components. Petitioner, age 20 at the time, was one of several men who helped carry out a conspiracy to commit the murder.

Petitioner's contribution to the conspiracy was to provide the services of his pickup truck. According to Petitioner, his accomplices had arranged a meeting by telling Roberts that they would transport him to another state where he could assume a new identity. When

Roberts arrived at the meeting, however, Petitioner's accomplices seized him and placed him into the back of Petitioner's truck. As one of the accomplices assaulted Roberts in the back of the truck, Petitioner drove to a designated location. Upon arrival, the accomplice took Roberts out of the truck and dragged his body into a ditch.

Petitioner then returned with the accomplice to the accomplice's home, where the two men washed blood out of the back of the pickup truck. The following day, Petitioner went back to the ditch and helped another accomplice hide Roberts' body with leaves. Two weeks later, law enforcement officials discovered the body. They determined that Roberts had died of traumatic fractures to his skull and multiple stab wounds to his back, one of which punctured his lung. Petitioner received $2,500 from his accomplices for his assistance in carrying out the murder.

Petitioner entered a guilty plea to one count of first-degree murder. The San Mateo County Superior Court sentenced him to a term of 25 years to life. Due to credits for his good behavior during incarceration, Petitioner became eligible for parole before he had served his 25-year term. Nonetheless, three times, the BPT has declined to set a release date for him. At hearings in August of 2000, August of 2002, and September of 2004, the BPT concluded that Petitioner required "a more lengthy period of incarceration." Cal. Penal Code § 3041(b). Here, Petitioner challenges the BPT's denial of parole at his third hearing.

During that September 2004 hearing, the BPT denied parole for one year, concluding that Petitioner would pose "an unreasonable risk of danger to society or a threat to public safety if released from prison." Pet. Appx., Ex. F, at 54-57. In so concluding, the BPT considered the commitment offense, which it described as "an execution" and "a callous offense" carried out in order to obstruct the criminal justice process. Id. at 54. The BPT noted that it had concerns about Petitioner's "level of insight" into his own culpability. Id. at 57. The BPT also noted that Petitioner had four "counseling chronos," or minor disciplinary infractions. Id. at 55. Finally, the BPT noted that the San Mateo District Attorney was opposed to parole. Id. After listing these reasons for denying a release date, the BPT acknowledged Petitioner's exemplary prison record, commending him for the progress he

2

1  had made, including his ongoing vocational training and his participation in Narcotics
2  Anonymous.  Id.  The BPT encouraged Petitioner that he was "very, very close" to obtaining
3  a release date and stated that in terms of progress toward release he was "doing what [he]
4  need[s] to do."  Id.

5  Petitioner timely, but unsuccessfully, sought a petition for writ of habeas corpus in
6  San Mateo County Superior Court.  He unsuccessfully appealed his case to both the
7  California Court of Appeal and the California Supreme Court.  The instant petition followed.

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ( 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000 ).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state Court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. See id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark, 331 F.3d at 1069.

## DISCUSSION

Petitioner advances two central claims in support of his petition. First, he argues that the BPT's denial of parole violated the terms of his plea agreement. Second, Petitioner claims that the BPT's ruling did not comport with the Due Process Clause.

### I. Plea Agreement Claims

Petitioner first argues that the terms of his plea agreement required his release after 15 years of incarceration. He claims that the prosecutor promised he would serve no more than 15 years as long as he remained free from discipline. Petitioner alleges that he has remained discipline-free and, therefore, has upheld his end of the bargain. He claims that the BPT's decision to deny parole is therefore a violation of the terms of his plea agreement.[1] See

---

[1] Respondent contends that Petitioner's claim is time-barred because he was aware of the factual predicate for the theory underlying his claims for habeas relief more than one year before he filed the petition, *i.e.* that the BPT had previously denied him parole in violation of the putative terms of his plea agreement. See 28 U.S.C. § 2244(d)(1) (establishing a one-year statute of limitations on federal habeas petitions). This argument is unpersuasive. Here, Plaintiff challenges the BPT's third decision denying him parole, which did not become effective until January 27, 2005. Thus, even though Plaintiff might have challenged previous denials of parole on the same theory he presents here, the factual predicate for the particular claim actually presented in this habeas petition did not exist until the BPT issued its ruling. See Redd v. McGrath, 343 F.2d 1077, 1084 (9th Cir. 2003) (concluding that the factual predicate for a habeas challenge exists once the BPT denies parole). For this reason, the Court holds that Petitioner's claim is timely. See Nino v. Galaza, 183 F.3d 1003, 1005-06 (9th Cir. 1999) (noting that the limitations period under AEDPA "is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge.").

4

Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

The record, however, provides scant support for Petitioner's claim. Simply put, there is no evidence in the record to suggest that his plea agreement incorporated such a promise. Instead, Petitioner offers only his own unsupported and equivocal declaration, which states:

> I was told that I would receive a sentence of 25 years to life, but that I would *probably* do no more than 15 years, assuming generally good behavior, because 15 years was the *approximate* time inmate's [sic] were serving that had been convicted of a similar crime. I was further told that I would be *considered* for parole before the minimum date, after approximately fifteen (15) years. I would in fact be paroled after the minimum date. Thus, I directly understood that I would serve no more than fifteen years in prison.
>
> Based on these discussions [between my attorney, the prosecutor, and the Court], I believed that I would serve only fifteen (15) years. I have stayed disciplinary free for my entire incarceration, which is now twenty two (22) years, and have maintained an excellent program. However, I have not been released from prison and I have not even received a future release date. I considered the certainty of bein released after no more than fifteen (15) years to be the most important fact that induced me to enter into the plea agreement. If I had known that I would not be released, I would never have pled guilty.

Pet. Appx., Ex. Q, ¶¶ 3-4. This declaration provide inadequate support for his habeas claim. Simply put, there is nothing inconsistent with what Petitioner claims he was told and what has occurred. He *has* been considered for parole before his minimum date. A promise that he would *probably* be released is not the same as a promise of release. Further, even if the Court were to construe the declaration in the manner urged by Petitioner, it still is insufficient. It does not indicate *who* made a promise to him about his "certain" release. Also, it does not indicate *when* such a promise was made. Petitioner provides no affidavit from his attorney or the prosecutor whose conversations purportedly produced this promise.

Furthermore, the plea colloquy, which is the only contemporaneous record of the unwritten agreement, lends no support to Petitioner's interpretation of the plea. That colloquy involved only the following brief discussion:

> THE COURT: The defendant's application for probation will be denied in this matter because of the extreme seriousness of the offense.

5

> And it will be the judgment and sentence of the court that [Petitioner] be committed to the California Department of Corrections for the term prescribed by law, which is twenty-five years to life.
>
> He is to be given credit for time served of 307 days actual time plus 153 days good time for a total of 460 days.
>
> Is there anything further in this matter, gentlemen?
>
> MR. HALLINAN [counsel for Petitioner]: No, there isn't.

Pet. Appx., Ex. A, at 188-89 (emphasis added). The probation report, on which the sentence and guilty plea were based, also contains no indication that the plea agreement involved any kind of understanding about Petitioner's automatic release on parole.

In light of this record, the San Mateo Superior Court refused to find "that there was a violation of a term of the plea agreement in the absence of evidence of a promise or representation regarding parole eligibility at the time of the plea." Pet. Appx, Ex. L, at 5 (citing In re Honesto, 130 Cal. App. 4th 81, 92-93 (2005)). The California court's decision was based neither on an unreasonable determination of the facts nor on an unreasonable application of Supreme Court precedent. See 28 U.S.C. § 2254(d). The record in this case stands in stark contrast to those cases in which courts have found that the denial of parole constitutes a breach of the petitioner's plea agreement. See, e.g., Buckley v. Terhune, 441 F.3d 688, 691-98 (9th Cir. 2006) (construing a written plea agreement in defendant's favor where one paragraph stated that he would serve a "maximum of fifteen years" while another paragraph stated "fifteen to life"); Brown v. Poole, 337 F.3d 1155, 1158-62 (9th Cir. 2003) (finding that the prosecutor had breached a promise, made on the record, that the defendant would "get out in half the time" if he "behave[d] [himself] at the state prison"). Here, there is no objective evidence from which a Court could conclude that Petitioner's plea agreement entailed a guaranteed release.

Nor is this a case where Petitioner received nothing in exchange for his plea agreement of 25-to-life. See, e.g., United States v. De La Fuente, 8 F.3d 1333, 1339 (9th Cir. 1993) (construing an ambiguous plea agreement in the defendant's favor where an alternative interpretation would have meant that "Petitioner cooperated but received nothing for his cooperation"). To the contrary, by accepting an indeterminate plea of 25-to-life, Petitioner

6

avoided other potential consequences of a first-degree murder charge, which carried a potential for even harsher sentences. Although Petitioner has not received the full benefit to which he now considers himself entitled, he has not been denied the benefit of the bargain he actually struck by pleading guilty. Indeed, the fact that he is currently challenging the denial of parole is itself evidence that he received a benefit from his plea.

The Court is also unpersuaded by the flip-side of Petitioner's argument--that, because his plea agreement actually does not require his immediate release upon eligibility for parole, he did not knowingly and voluntarily enter into his plea agreement. See, e.g., Boykin v. Alabama, 395 U.S. 238, 242 (1969). Although Petitioner now claims that he understood his plea agreement as requiring his automatic release as soon as he became eligible for parole, Petitioner's plea agreement must be measured by objective contract law standards, which focuses on Petitioner's "*reasonable* beliefs." See Brown, 337 F.3d at 1159. Here, there is no objective factual support to suggest the reasonableness of Petitioner's subjective belief that his plea agreement entailed a sentence of no more than fifteen years. See De La Fuente, 8 F.3d at 1339; Buckley, 441 F.3d at 691-98. To the contrary, the only indication from the contemporaneous record is that Petitioner received a run-of-the-mill indeterminate sentence of 25-to-life. Accordingly, the Court finds that the California court's decision to deny habeas relief was neither contrary to nor an unreasonable application of Supreme Court precedent.

## II.  Due Process Claims

Petitioner next argues that the BPT's decision to deny parole violated the Due Process Clause. He argues that the BPT's ruling was unsupported by evidence, that the BPT relied on an "unconstitutionally vague" standard in denying him parole, and that the BPT thereby deprived him of a federally protected liberty interest created by California's parole regime.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7 (1979). Yet a State "create[s] a liberty interest protected by due process guarantees" when its parole scheme employs "statutory language [that] itself creates a protectible expectation of parole." Id. at 11-12.

7

1    In California, the Penal Code provides that "prior to [an] inmate's minimum eligible
2    parole release date a panel of two or more commissioners or deputy commissioners shall
3    again meet with the inmate *and shall normally set a parole release date*." Cal. Penal Code §
4    3041(a). Citing this mandatory statutory language, the Ninth Circuit has repeatedly held that
5    "California's parole scheme gives rise to a cognizable liberty interest in release on parole."
6    McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2002); see also Irons v. Carey, 479 F.3d
7    658, 662 (9th Cir. 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.
8    2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Thus, the BPT's decision to
9    deny parole cannot stand unless it is supported by "some evidence," a "minimal standard"
10   designed to ensure that "'the record is not so devoid of evidence that the findings of the
11   disciplinary board were without support or otherwise arbitrary.'" Sass, 461 F.3d at 1128-29
12   (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)). The "some evidence" standard is
13   "clearly established" Supreme Court precedent and is therefore applicable under AEDPA to
14   decisions rendered by the BPT. Id. at 1129.

15   Here, the BPT relied on the following evidence to deny parole: (1) four minor
16   disciplinary infractions, (2) the district attorney's opposition to release, (3) Petitioner's "level
17   of insight" into his culpability, and (4) the nature of the offense. Although the presiding
18   parole commissioner commented that the denial was base only "partially" on the
19   commitment offense, the record makes clear that the BPT's primary concern was the "callous
20   and brutal execution style murder" in which Petitioner had participated. Pet. Appx., Ex. F, at
21   55. Petitioner contends that the BPT's reasons are insufficient to justify the denial of parole
22   under the "some evidence" standard. He further argues that he is entitled to habeas relief
23   because the California courts' decision to uphold the BPT's denial of parole was an
24   unreasonable application of the clearly established "some evidence" standard.

25   As to the BPT's first reason, the Court agrees that the four minor disciplinary
26   infractions, or "counseling chronos," are nearly meaningless and do not provide any
27   evidentiary support for the BPT decision to deny of parole. To begin, it is not clear that the
28   BPT even relied on these infractions to support its decision. See Pet. Appx., Ex. F, at 55

8

(noting the chronos, without further remark, but continuing thereafter to praise Petitioner for his behavior during confinement). Second, such "counseling chronos" cannot form the basis of a legitimate denial of parole because they entail no actual discipline. See In re Smith, 109 Cal. App. 4th 489, 501 n.5 (citing CAL. CODE REGS. tit. 15, § 3312(a)(2)). Moreover and more importantly, as the BPT recognized, Petitioner's conduct during incarceration has been exemplary. He has received counseling for his substance abuse problems, participated in self-help programs, completed vocational training, and raised no significant disciplinary problems. See Pet. Appx., Ex. C; Pet. Appx., Ex. F, at 55. The minor counseling chronos simply do not undermine in any meaningful fashion the fact that Petitioner "has remained entirely disciplinary free over his 20 years of custody while serving time in institutions that are experiencing a great deal of violence and racial tension." Pet. Appx., Ex. F, at 28.

Still, the other three reasons cited by the BPT are sufficient to meet the minimal "some evidence standard." For instance, the BPT properly considered the objections of the Santa Clara district attorney, as it was required to do. Cal. Penal Code § 3046(c). While the district attorney acknowledged Petitioner's progress, he also observed Petitioner's lack of insight into the details of his crime and his inability to appreciate the significant role he played in it. Further, the district attorney voiced his concern about the nature of the crime, which "cut to the heart of the justice system." Pet. Appx., Ex. F, at 42. The BPT was justified in relying on the district attorney's objections, especially given the unique institutional concerns that he brings as a prosecutor to a case involving the murder of a state's witness.

The BPT also independently gave voice to some of the district attorney's concerns when it commented on Petitioner's "level of insight" into the crime and the circumstances of the crime itself. As to the question of insight, the BPT noted that it could not understand the "frame of mind" that "allowed [Petitioner] to commit this crime and then participate in covering it up." Id. at 56. The BPT's concerns were prompted in part by Petitioner's own testimony that, at the time of the crime, "all he needed to know" about his friend's request to participate in the scheme was that his friend "[was] a good guy and he was involved with it."

9

Id. at 13.  Petitioner further testified that he did not become aware he had participated in a murder until the following day when he helped conceal the body, and that his initial reaction to the killing was to become "concerned about[his] own safety."  Id. at 13-14.  Obviously, Petitioner's state of mind at the time of the crime will never change; the most he can do during incarceration is to gain an appreciation of the circumstances that put him in such a frame of mind.  This he has started to do, by recognizing the influence of drugs on his behavior, by identifying the influence of his friends, and by acknowledging that he had failed to empathize with the victim in the case.  Id. at 33-36.  On this record, however, the Court cannot find that it was unreasonable for the California courts to consider Petitioner's testmony about the crime as "some evidence" on which to base a denial of parole, especially when, as the district attorney observed, Petitioner played a significant role not only in committing but also concealing a crime that undermines the entire system of justice.

Finally, there is the nature of the crime of conviction.  Petitioner repeatedly argues that the BPT's reliance on the immutable facts of the murder constitutes a violation of the Due Process Clause.  This argument pertains to a constitutional right whose contours remain somewhat murky in the Ninth Circuit.  In Biggs v. Terhune, a case that involved one of Petitioner's accomplices who had also been denied parole based on the same underlying crime, the Ninth Circuit held that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation."  334 F.3d at 917 (emphasis added).  Subsequent to Biggs, however, the Ninth Circuit has twice rejected claims that the BPT's denial of parole based on the unchanging facts of the prisoner's commitment offense runs afoul of the Due Process Clause.  See Irons, 479 F.3d at 664-65 ("Because we find that Irons' crime was similarly cruel or vicious, we cannot say that there was not 'some evidence' to support the Board's determination that Irons was unsuitable for parole under California law."); Sass, 461 F.3d at 1129 ("The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision.").  This Court is aware of no published Ninth Circuit decision

that has granted habeas relief under AEDPA based on the BPT's "continued reliance" of a prisoner's conviction offense, though certain district courts, including this one, *have* granted relief on this basis. See, e.g., Rosenkrantz v. Marshall, 444 F.Supp.2d 1063 (C.D. Cal. 2006); Brown v. Kane, No. C 05-5188 CRB (N.D. Cal. May 2, 2007) (Breyer, J.).

In this case, there are two independent answers to Petitioner's argument. First, the BPT did *not* rely exclusively on the facts of the commitment offense. Although Petitioner attempts to portray his case as falling into line with the Biggs-Sass-Irons line of cases, the BPT actually relied on more than the commitment offense in justifying its decision. As discussed above, this Court finds that the BPT's reasons properly included the district attorney's objections to the crime and its concerns about Petitioner's insight into the offense. Second, even if these other items could not be considered the "some evidence" necessary to support the denial of parole, the BPT's exclusive reliance on the facts of this crime *still* would not warrant habeas relief. In Irons, the shooting of a housemate following an angry confrontation, as well as the disposal of the body a week later, was "callous" and "cruel" enough to justify the denial of parol. 479 F.3d at 664-65. In Sass, the petitioner had been convicted of second-degree murder after drunkenly driving into the victim, yet the facts of that case were deemed sufficient to warrant his continued incarceration. 461 F.3d at 1129. In Biggs, the Ninth Circuit addressed *the very same underlying crime at issue in this case*, and it found that the BPT's exclusive reliance on the facts of the case was enough to sustain its decision to deny parole to Petitioner's accomplice, who played at larger role in the conspiracy but also "did not commit the murder himself." 334 F.3d at 916. Given that the BPT's denial of parole was upheld in those cases, the Court concludes that the same result is appropriate here. The facts of this case are easily more serious that those of the crime at issue in Sass, and they are *identical* to those of the crime at issue in Biggs. Furthermore, as in all of those cases, Petitioner was "deemed unsuitable for parole prior to the expiration of [his] minimum term[]." Irons, 479 F.3d at 665.

In sum, the Court therefore concludes that the BPT's decision to deny parole was supported by "some evidence" and was therefore in accord with the Due Process Clause. It

11

follows, then, that the California Court's decision upholding the denial of parole was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The Court has considered the other arguments presented by Petitioner and finds them to be without merit.[2]

---

[2] Petitioner has submitted 163 pages of written analysis in support of his petition, including a 74-page opening brief and a 42-page reply brief. Chiefly, these materials analyze California's parole system and make observations, both legal and political, about what Petitioner views as the defective and unconstitutional operation of the system. Two of these observations warrant a response by the Court.

First, Petitioner suggests that the BPT's decision to deny parole violated the Sixth Amendment, insofar as the BPT made additional findings of fact about the underlying crime to justify its decision. Petitioner argues that such factfinding runs afoul of the Supreme Court's decisions in Apprendi v New Jersey, 530 U.S. 466 (2000); Blakely v Washington, 542 U.S. 296 (2004); and United States v. Booker, 543 U.S. 220 (2005). Those cases, however, are inapplicable. Even assuming that those cases are pertinent in the parole context, the BPT did no impermissible factfinding about the crime. It merely characterized the commitment offense based on facts already admitted by the defendant. These admissions exist by virtue of Petitioner's plea, as well as his colloquy with the BPT at his parole hearing. The Sixth Amendment does not prohibit drawing conclusions from a criminal defendant's own admissions. Booker, 543 U.S. at 244. Moreover, Petitioner cites no authority, much less clearly established Supreme Court precedent, to support the proposition that the Apprendi-Blakely-Booker cases have any bearing on parole proceedings. This Court finds it difficult even to imagine how such cases even *could* be applied in a context that presupposes additional factfinding. After all, it is the duty of parole boards to find facts--about the crime, the prisoner's disciplinary record, the prospects of rehabilitation--in order to determine whether parole is appropriate. In fact, the BPT's authority to find facts is implicit in the fact that courts review the BPT's decisions to ensure that they are supported by "some evidence." Nor has Petitioner pointed to any clearly established Supreme Court authority to support his contention that the parole authorities somehow lose authority to rely on the admitted circumstances of the crime simply because it agreed to enter into a plea agreement--the benefit of which is evident in Petitioner's eligibility for parole.

Second, Petitioner suggests that parole proceedings in California are governed by unconstitutionally vague concepts. He notes that under California law the BPT may deny parole based on the unchanging circumstances of the commitment offense so long as it can "point to factors beyond the minimum elements of the crime for which the inmate was committed." In re Dannenberg, 34 Cal. 4th 1061, 1071 (2006). He contends that this vacuous standard is so vague as to be unworkable, especially in cases involving plea agreements, where the circumstances of the crime are almost always, by definition, "beyond the minimum elements" of the commitment offense. Petitioner's criticism of the California parole system is not without force. Unfortunately for him, it provides no basis for issuing a writ of habeas corpus in this case. No Ninth Circuit or Supreme Court case has ever suggested, much less clearly established, that the standards for granting or denying parole, as opposed to the standards for imposing criminal sanctions in the first place, must be sufficiently specific or clear. If anything, it appears that the law is to the contrary--given that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz, 442 U.S. at 7, it would appear that the State of California has unbridled discretion in determining the standard by which to grant parole, if at all. The Ninth Circuit decisions recognize California's authority in this matter by relying upon Dannenberg, in part, as setting forth the decision-making standard for which "some evidence" must be found. See, e.g., Irons, 479 F.3d at 663 (citing Dannenberg, 34 Cal. 4th at 1071). Finally, even if this Court were to accept the unprecedented

**CONCLUSION**

Petitioner's plea agreement does not provide a basis for habeas relief because there is inadequate evidence to support Petitioner's view that the plea entailed a guarantee that he would receive parole after 15 years of imprisonment. The reasons given by the BPT for denying parole were supported by "some evidence" in the record, and its decision therefore does not violate the Due Process Clause. Accordingly, the petition is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 10, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

argument that a *judicial opinion* by the California Supreme Court could render California's statutory and regulatory parole scheme constitutionally deficient, that deficiency would have no bearing on this case; this Court concludes that "some evidence" would still support the BPT's ultimate determination "that consideration of the public safety requires a more lengthy period of incarceration for [Petitioner]." Cal. Penal Code § 3041(b). To the extent that Petitioner contends the BPT and the California courts misapplied the statutes and regulations governing parole proceedings--a contention with which this Court disagrees--the misapplication of state law does not provide a basis for federal habeas relief. 28 U.S.C. § 2254.

G:\CRBALL\2006\5686\Order 1.wpd           13